IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**PLANET BINGO, LLC,**
a California limited liability company,

    Plaintiff,

v.                                         CASE NO. 5:10-cv-64-RS-CJK

**WILD BILL'S BINGO, INC., et al.,**

    Defendant,

_____/

## **ORDER**

Before me are the following cross-motions for summary judgment and responses in opposition:

1. Plaintiff's Motion for Summary Judgment Against Gaming Entertainment Enterprises, LLC (Doc. 189);

2. Gaming Entertainment Enterprises, LLC's Response to Plaintiff's Motion for Summary Judgment (Doc. 197);

3. Gaming Entertainment Enterprises, LLC's Motion for Summary Judgment (Doc. 190);

4. Plaintiff's Response to Gaming Enterprises, LLC's Motion for Summary Judgment (Doc. 198).

Accordingly, the relief requested in Plaintiff's Motion for Summary Judgment Against Gaming Entertainment Enterprises, LLC (Doc. 189) is **DENIED**, and the relief requested in Gaming Entertainment Enterprises, LLC's Motion for Summary Judgment (Doc. 190) is **GRANTED**.

## STANDARD OF REVIEW

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

An issue of fact is material "if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Wright v. Sandestin Investments, LLC,* 914 F. Supp. 2d 1273, 1278 (N.D. Fla. 2012). Thus, if reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment. *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v.*

*Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)). However, a mere 'scintilla' of evidence supporting the nonmoving party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 251).

## BACKGROUND

The Parties in this case have filed cross-motions for summary judgment. Therefore, I will accept the facts in the light most favorable to the non-movant for the specific motion I am considering. *See Galvez v. Bruce*, 552 F.3d 1238, 1239 (11th Cir. 2008) (citing *Vinyard v. Wilson*, 311 F.3d 1340, 1343 n.1 (11th Cir. 2002)). "'All reasonable doubts about the facts should be resolved in favor of the non-movant.'" *Id.* (quoting *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999); *Clemons v. Dougherty County*, 684 F.2d 1365, 1368-69 (11th Cir. 1982).

Pursuant to N.D.Fla.R. 56.1(A), "All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be filed and served by the opposing party." Plaintiff has not filed an objection to Defendant's statement of facts (doc. 191) or any specific objections to Defendant's motion for summary judgment as

required by Fed. R. Civ. P. 56(c). Thus, I will consider the Defendant's statement of facts as undisputed. Fed. R. Civ. P. 56(e)(2).

On March 23, 2010, Plaintiff filed this case against Wild Bill's Bingo, Inc. (Inc.), which was incorporated and began doing business in 2003, asserting claims for breach of contract and unjust enrichment. Doc. 1. William Dalton and Vickie Broadway were the only members on the board of directors. On June 1, 2010, Wild Bill's Bingo, LLC (LLC) was formed, with Dalton and Broadway as its only members. The Inc., immediately ceased operations and the LLC took over. On January 18, 2011, Plaintiff was awarded a judgment against the Inc. Doc. 66.

The judgment still outstanding, on November 16, 2011, Plaintiff filed an impleader complaint against the LLC alleging that the LLC was formed for the purpose of defrauding Plaintiff by transferring all of the assets and operations of the Inc., to the LLC. Doc. 87. I granted Plaintiff's Motion for Summary Judgment (doc. 108), and judgment was entered in favor of Plaintiff against Impleaded Defendant Wild Bill's Bingo, LLC. Doc. 112 – 13. In the May 24, 2013, Order, I found that "it is clear that the LLC is a mere continuation if the Inc. under a different name." Doc. 112.

About a month after judgment was entered against the LLC, on June 25, 2013, William Dalton and Vickie Broadway approved the dissolution of the Inc., (doc. 197-1) and William Dalton, Vickie Broadway, Perry Cain, and Cobi Peel

formed Gaming Entertainment Enterprises, LLC (GEE) (doc. 189-3). The judgment still outstanding against the Inc., on June 27, 2014, Plaintiff filed its Second Impleader Complaint (doc. 166). In Plaintiff's Second Impleader Complaint, Plaintiff alleges that the Inc., fraudulently transferred its assets to the LLC, who then fraudulently transferred its assets to GEE. Doc. 166. Additionally, Plaintiff alleges that GEE is the mere continuation of the businesses operated by Wild Bill's Bingo, Inc./Wild Bill's Bingo, LLC (Wild Bill's Bingo). *Id.*

After the formation of GEE, the doors to the bingo hall were closed for approximately 3 – 4 days, and Wild Bill's Bingo immediately ceased operating. Doc. 191. During that time, GEE changed the signs of the bingo hall, made cosmetic changes to the exterior and interior, changed the name of the bingo hall from Wild Bill's Bingo to Fun Time Bingo, changed the theme from a western theme to a carnival theme, changed the employees' uniforms, and acquired new food equipment. Additionally, GEE provides different games, a different snack food menu and lower prices than Wild Bill's Bingo provided its customers.

It is undisputed that any changes to the employees and management from Wild Bill's Bingo to the GEE were unrelated to GEE's formation. Additionally, GEE carried on business in the same building as Wild Bill's Bingo with the same tables and chairs, public address system, copy machine, refrigerators and freezer, and soda fountain.  None of these assets belonged to Wild Bill's Bingo or GEE.

Instead, the employees work for a staff-leasing firm, the public address system belongs to a third party, the copy machine is leased, the refrigerators, freezers, tables and chairs belong to the landlord, the soda fountain is leased, and no money or other consideration was transferred from Wild Bill's Bingo to GEE. In deposition, Mr. Dalton testified that GEE signed all new leases with the third parties, and is renting the building on a month-to-month lease.[1]

Moreover, Mr. Dalton and Mr. Peel testified in deposition that GEE was formed to be an entertainment company rather than just a bingo business. Doc. 189-1,2. GEE's business model includes hosting concerts, wrestling, and boxing events to benefit charitable causes in the community. Doc. 191. However, at the time of Mr. Dalton's deposition, GEE had not operated a single concert, wrestling or boxing match, or anything other than the bingo operations. Doc. 189-1 at 45. Mr. Dalton explained that because of the illnesses and deaths of two of its board members GEE had not expanded its operations yet. Doc. 189-1.

## ANALYSIS

The Federal Rules of Civil Procedure Rule 69(a)(1) provide that proceedings supplementary "must accord with the procedure of the state where the court is

---

[1] Plaintiff argues that during deposition Mr. Dalton testified that GEE owes $7500 per month in rent, had been paying rent each month, but was in arrears to the landlord for rent in the amount of $110,000. Doc. 189. According to Plaintiff, these figures are mathematically improbable unless GEE had assumed the rental obligation of Wild Bill's Bingo. *Id.* However, in deposition, Mr. Dalton actually testified that GEE had not paid any rent since GEE began operations (doc. 189-1). The $600 per week that GEE pays to Mr. Peel is for Mr. Peel's services, not for rent. Doc. 189-2.

located." Fed. R. Civ. P. 69(a)(1). Under Florida Statute Section 56.29, proceedings supplementary "enabl[es] the judgment creditor not only to discover assets which may be subject to his judgment, but to subject them thereto by a speedy and direct proceeding in the same court in which the judgment was recovered." *Estate of Jackson v. Ventas Realty, Ltd. P'ship*, 812 F. Supp. 2d 1306, 1309 (M.D. Fla. 2011) (citing *Regent Bank v. Woodcox,* 636 So.2d 885, 886 (Fla. 4th DCA 1994). A Section 56.29 supplemental proceeding is "equitable in nature and should be liberally construed" to ensure that a judgment creditor receives the most complete relief possible without the necessity of initiating a separate action. *Nat'l Mar. Servs., Inc. v. Straub*, 979 F. Supp. 2d 1322, 1327 (S.D. Fla. 2013); *see also Cuban Cigar Brands, N.V. v. Tabacalera Popular Cubana, Inc.*, No. 02-23124-CIV, 2008 WL 4279641, at *2 (S.D. Fla. Sept. 16, 2008).

Under Florida law, "[p]roceedings supplementary are entirely statutory and [are] of limited purpose: to aid a judgment creditor . . . to discover then effectuate the assets of a judgment debtor." *Estate of Jackson*, 812 F. Supp. at 1309-10. Therefore, pursuant to Section 56.29, I may "order any property of the judgment debtor, not exempt from execution, in the hands of any person . . . to be applied toward the satisfaction of the judgment debt." *Id*. at 1309. A supplemental proceeding allows a "judgment creditor to follow and retrieve money that a judgment debtor passed to a third-party . . . regardless of whether the impleaded

party's role in receiving and possessing the assets is rightful . . . or wrongful . . . ." *Id.* at 1309-10. Although supplemental proceedings require a transfer of assets, I may nevertheless impose the liabilities of a predecessor corporation upon a successor corporation if the "successor is a mere continuation of the predecessor, or . . . the transaction is a fraudulent effort to avoid the liabilities of the predecessor."*Amjad Munim, M.D., P.A. v. Azar*, 648 So. 2d 145, 151 (Fla. Dist. Ct. App. 1994) (citing *Bernard v. Kee Mfg. Co.,* 409 So.2d 1047, 1049 (Fla.1982)).

In Plaintiff's Motion for Summary Judgment, Plaintiff argues that GEE's taking over the business operations of Wild Bill's Bingo was a mere continuation of Wild Bill's Bingo's business, and that the transfer of the assets and business operations of Wild Bill's Bingo to GEE was fraudulent. Doc. 189. In response, and in its own motion for summary judgment, GEE argues that it is neither a fraudulent transferee nor a mere continuation of Wild Bill's Bingo, and is thus not subject to collection of the Judgment. Docs. 190, 197.

The mere continuation exception to liability applies when a successor corporation is merely a continuation of its processor corporation under a different name. *Bud Antle, Inc. v. E. Foods, Inc.*, 758 F.2d 1451, 1458 (11th Cir. 1985). The test is "whether there is a continuation of the corporate entity of the seller-not whether there is a continuation of the seller's business operation." *Id.* Therefore, a

key element to a claim for continuation is a common identity of the officers, directors and stockholders in the selling and purchasing corporations. *Id.* at 1459.

When I found that the LLC was a mere continuation of the Inc., I recognized that "they have the same website, signage, and goodwill." Doc. 112. Specifically, I found that "[t]he former president and secretary/treasurer of the Inc. are now the [only] members of the LLC, and each acknowledged that there would be no way for anybody on the outside to have known that the LLC replaced the Inc." *Id.* In this case, although GEE conducts business from the same location and building where Wild Bill's Bingo previously conducted business, GEE is a separate and distinct legal entity.

Plaintiff argues that because GEE operates a bingo business, like Wild Bill's Bingo, GEE cannot claim that it had "run its own race." *See Munim*, 648 So. 2d at 154. However, the test is not whether there is a continuation of the predecessor's business operations, but whether there is a common identity of the officers. *See Bud Antle*, 758 F.2d at 1458. Wild Bill's Bingo had two stockholders and officers, while GEE has four members. Although Plaintiff alleges the addition of Cobi Peel and Perry Cain is completely superficial, Plaintiff has presented no facts to support that allegation. In deposition, both Mr. Peel and Mr. Dalton testified that they had board meetings, albeit informal, and that Mr. Peel and Mr. Cain participated in

creating GEE's business model. Neither Mr. Peel nor Mr. Cain had any input regarding the operation of Wild Bill's Bingo.

Moreover, there was a distinct end to Wild Bill's Bingo prior to GEE beginning its business operations. The bingo hall was closed for approximately 3 – 4 days after Wild Bill's Bingo ceased operations, and GEE made significant changes to the bingo hall to reflect that GEE was now operating the bingo hall, not Wild Bill's Bingo. These changes were reflected in the new signs, change in name, change in theme, change to employees' uniforms, and the different prices. GEE did not receive the benefit of Wild Bill's Bingo goodwill, and no one from the outside would have thought that GEE and Wild Bill's Bingo were the same corporation. Accordingly, GEE is not a mere continuation of Wild Bill's Bingo. Therefore, to grant summary judgment for Plaintiff, I must find that Wild Bill's Bingo fraudulently transferred assets to GEE to avoid satisfying its judgment to Plaintiff.

Section 56.29(6)(b), provides that "When any gift, transfer, assignment or other conveyance of personal property has been made or contrived by defendant to delay, hinder or defraud creditors," I must order the transfer to be void, and those assets may be used to satisfy the execution of the judgment. The business assets transferred could have minimal value and still be considered a fraudulent transfer if the transfer harms the judgment creditor by eliminating from the original business its means of earning revenues to pay the judgment creditor. *See Munim,* 648 So.2d

145 at 153. Plaintiff has not presented any evidence to support a finding that Wild Bill's Bingo transferred any assets to GEE, or even that it had any tangible assets to transfer. It is undisputed that everything in the bingo hall is either leased or owned by a third party, and Mr. Dalton testified in deposition that GEE had its own leases and did not assume Wild Bill's Bingo's contractual obligations. Unlike the LLC, GEE did not use Wild Bill's Bingo's goodwill, signs, decorations, theme, prices, snack menu, or business model. Instead, GEE was created and operated taking nothing from Wild Bill's Bingo. Thus, there are no tangible assets of Wild Bill's Bingo in the hands of GEE that may be obtained by Plaintiff to satisfy its judgment.

## CONCLUSION

Accordingly, the relief requested in Plaintiff's Motion for Summary Judgment Against Gaming Entertainment Enterprises, LLC (Doc. 189) is **DENIED**, and the relief requested in Gaming Entertainment Enterprises, LLC's Motion for Summary Judgment (Doc. 190) is **GRANTED**.

**ORDERED** on January 13, 2015.

/s/ Richard Smoak
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**